,02 MAR 2000

THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

Paper No. 23
RLS/MM

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

In re Ball Corporation

_____

Application Serial No. 75/092,220

_____

Sabrina C. Stavish of Sheridan Ross PC for Ball
Corporation.

Amos Thomas Matthews, Trademark Examining Attorney, Law
Office 108 (David Shallant, Managing Attorney).

_____

Before Simms, Hairston and McLeod, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:

Ball Corporation (applicant), an Indiana corporation,
has appealed from the final refusal of the Trademark
Examining Attorney to register the asserted mark (shown
below) for metal tops for liquid containers.[1]

_____

[1] Application Serial No. 75/092,220, filed April 22, 1996.
During the course of prosecution of this case, applicant filed an
amendment to allege use on March 19, 1997, claiming dates of use
since October 10, 1996.



During prosecution, applicant sought to amend its mark and the description of the mark. The proposed amended mark is shown below.



The proposed amended description states: "The mark consists of a circular elevated ridge on the top of a liquid container."

The Examining Attorney has refused to enter the amendment to the mark, arguing that the proposed amendment deletes features of the mark which were previously claimed and that the new mark in effect creates a different commercial impression from the originally claimed mark.

That is to say, the Examining Attorney contends that the circular elevated ridge is only a portion of the top of applicant's containers and that the amended mark is a material alteration of the originally claimed mark, requiring republication (if the original had been published) in order to fairly present the mark for purposes of opposition. Applicant, on the other hand, contends that the amendment only seeks to disclaim rights in functional aspects which had appeared in solid lines in the original drawing.

With respect to this preliminary matter, we agree with the Examining Attorney that the proposed amended mark presents a mark with a different commercial impression from that originally claimed -- a larger circular ridge and a smaller more elevated circular ridge with all portions of the metal top from the larger circular ridge being claimed. See Trademark Rule 2.72(a) and TMEP § 807.14(a). See also Visa International Service Association v. Life-Code Systems, Inc., 220 USPQ 740 (TTAB 1983). Accordingly, we must analyze the issues in this case on the basis of the originally submitted drawing and the mark shown thereon. We hasten to add, however, that we would reach the same results with respect to functionality and inherent distinctiveness were we to allow the amendment.

3

Turning now to the main grounds of refusal, the Examining Attorney has refused registration on the ground that the asserted mark is *de jure* functional[2] and on the ground that the asserted mark, even if not *de jure* functional, lacks inherent distinctiveness. Applicant and the Examining Attorney have submitted briefs and an oral hearing was requested. However, applicant's attorney later withdrew that request.

## Functionality

The Examining Attorney argues that applicant's design is dictated by the function it performs. Referring to applicant's own promotional literature and various articles made of record from the Nexis computer search system, the Examining Attorney argues that the features of applicant's metal tops are functional in nature. The Examining Attorney points to the fact that the opening in applicant's metal lids is larger than most so that one using applicant's container has a bottle-like drinking experience. The rounded edges around the push-down top allow consumers to open the cans without cutting their fingers, the Examining Attorney contends. Also, the

---

[2] After this appeal was filed, Congress amended the Lanham Act by making functionality an explicit ground for refusal of an application, as well as a ground for cancellation of a registration. See Section 2(e)(5) and Pub. L. 105-330, 112 Stat. 3064 (Oct. 30, 1998).

4

Examining Attorney argues that applicant's goods incorporate a cheaper method of manufacturing because the push-down top provides cost advantages since less material is used in making applicant's metal tops. The Examining Attorney relies upon the following excerpts from printed publications in support of these arguments:

> …White Cap offers a new sports cap that simply twists open, with no cap or neck seal. And Ball-Foster's "Touch Top" can end touts its lip-friendly edge.
> Beverage World, March 1997

\* \* \* \* \* \*

> A bit less challenging than the completely shaped can, yet no less distinct, is the new Touch Top can from Ball. According to the company's Fisher, Ball first introduced this throw-back to the cone-top can at last year's Cannex show in Denver.
> Beverage World, June 1996

\* \* \* \* \* \*

> For Ball Container, the long-awaited Touch Top could be the key to taking cans into the next century. The Touch Top, scheduled to begin test marketing this month is a different can end that provides consumers with "a very bottle-like experience," says Jim Fisher, director of marketing for Ball's Metal Beverage Container Group.
> Beverage Industry, February 1996

\* \* \* \* \* \*

> Yet there are some underlying commonalties [sic] to many of the more successful new packages. One is "gulpability" -- or the ability for the consumer to drink beverages faster, which presumably leads to a more frequent purchase

pattern -- through a larger or more accessible container opening. Several suppliers put their own spin on this development…

Ball Corporation's Metal Beverage Container Group (Bloomfield, CO) has combined form and function in its two latest packaging breakthroughs -- the Touch Top bottle-like opening and the 8-ounce SlimCan…
Beverage World, December 1994

* * * * * *

The Muncie-based manufacturer last week showed off a new can prototype. The top of the can rises in the center. To open, the can is pushed open at the top…

The company says if the market goes for the idea, the new can would be cheaper to make. That's because less metal would be needed (thanks to dispensing with the pull top) and the design means a lower quality of aluminum could be used…

Ball has been developing Touch Top for more than a year. The design is based on a patent held by a former employee of a company Ball acquired in 1969…

Ball says Touch Top could appeal to consumers because liquid pours faster.

Would finger cuts occur when a Touch Top is opened? Ball says a smooth edge would prevent any such mishap…

GRAPHIC: PHOTO; PUSHY PRODUCT: Muncie-based Ball Corp. is hoping its new push-top beverage can is accepted by the sport-drink market, saying it's easier to use and cheaper to produce…
The Indianapolis Star, November 3, 1994

* * * * * *

Ball has moved the can opening to a slightly raised, round crater in the center of the can lid. Ball claims that the design gives aluminum

6

and steel cans the "same drinking characteristics as glass bottles" -- corporate-speak for easier chugging. Ball says the Touch Top is also safer than existing cans because there is a rounded lip instead of an edge when the metal seal is pushed inward with a fingertip. And after it is open, the seal remains attached to the can by a small, unscored section of the opening that acts as a tiny hinge.

…[Ball] is marketing Touch Top as a way its customers can differentiate their packaging from competitors, but the design also has manufacturing benefits. Ball estimates that it could set up a full-scale Touch Top production line for about $5 million, half the cost of a line making pull-tab tops.

Ball says Touch Tops will also save money by using less metal. If everything pans out as Ball hopes, other can manufacturers would eventually have to take a license.
The New York Times, October 30, 1994

* * * * * *

Unlike pull tabs, the Touch Top has a dish-like depression from which a small cone rises. At the top of the cone is a flat, circular tab that is recessed slightly…

Ball's design was spurred chiefly by desires to cut manufacturing costs and to come up with a way that lets products stand out.

The new top is made of just one piece of metal. The pull tab has three.

Ball estimates it would cost 50 percent less to build a Touch Top production line, said Ball spokesman Scott McCarty.

Not only does the new top require less metal, but there is no need to make the folded tab…

Bosshard said carbonated drinks are under considerable pressure and thinks the lid might be

7

too stiff. Others worry that they could get their fingers stuck or cut in the can.

Ball counters that the circle is smaller than most thumbs and that it would take some doing to jam a thumb into the can. Even if you did, the inside of the neck is thick and rounded. "You can't cut yourself," said McCarty.

Other benefits, according to Ball, are reduced chance of accidental opening, easier opening in the dark and "comfortable mouth feel." There is no problem with vending machines as long as cans are stacked properly, Ball officials claim. The Indianapolis News, October 26, 1994.

The Examining Attorney has also pointed to statements made in applicant's own promotional literature:

This is *not* your father's beverage can end. Touch Top™ practically screams "Try me!" to consumers looking to cool down fast with their favorite beverage. Touch Top offers a bottle-like drinking experience with all the benefits of a can. Did we mention it was fun?

\* \* \* \* \* \*

### UNIQUE

How many other beverage and food products out there come packaged with a handy center-push end? Touch Top™ stands out on grocery shelves. Its cone-shaped end opens easily and hinges downward, with absolutely no sharp edges. Touch Top attracts attention. 'Nuff said.

### FLEXIBLE

Would you like Touch Top's center opening larger? Smaller? We can do that, too. It's also no problem to fill Touch Top cans (it requires minimal line changes) and Touch Top even vends easily! The only rigid thing about Touch Top is its ability to seal the can just like SOT [Stay-On-Tab] ends. That's just part of the package.

8

> The Touch Top® end offers a distinct look for your
> product and a fast-flowing drinking experience
> for consumers.
>
> *     *     *     *     *     *
>
> Many of the new ends feature wider can openings
> for faster pour rates and promise enhanced safety
> features.
>
> Ball's Touch Top center-push end is another way
> for customers to differentiate products.  The
> distinctive-looking end offers consumers a
> bottle-like drinking experience from a can with
> no sharp edges.
> (From "advantage", Issue 1)

An article which applicant has made of record further

indicates:

> It's also easier on facial hair than the
> conventional pull tab that snags a few whiskers
> from time to time.
> The Muncie Star, October 30, 1994

The Examining Attorney concludes that the degree of

utility in applicant's configuration is great enough that

the design is a superior one which others need to copy.

Also, the fact that there are alternatives, according to

the Examining Attorney, does not detract from the

functional characteristics of applicant's configuration.

Applicant, on the other hand, argues that the evidence

of record is directed to the center-push opening portion of

the can lid, which may have functional aspects such as no

sharp edges and, because it has no pull-tab, may reduce

9

costs by cutting the material needed to open the can. However, applicant asserts that there is no design or utility patent covering applicant's configuration,[3] that applicant's advertisements and promotional literature do not tout the utilitarian advantages of the elevated portion of its metal lids and that the design does not result from a cheap method of manufacturing but rather results in additional design and manufacturing costs. Applicant's attorney states that the raised portion of the can lid actually uses more metal than the typical flat lid. Applicant also maintains that traditional flat-top can lids are available alternatives which have been manufactured and sold for decades and are equally efficient and less costly to produce. Applicant relies, among other things, upon the following article:

> "Everyone is groping for something," says Greg Robinson, senior development engineer. "We are in a very mature business where innovation and differentiation is everything right now."

> "The world is getting tired of the same old container," says Howard Chasteen, also a senior development engineer.

---

[3] While applicant's attorney has denied that there are any patents covering applicant's container, the material of record, including some of which the Examining Attorney has introduced, indicates that a patent was held by a former employee of a company which applicant acquired. However, the Examining Attorney has not disputed applicant's attorney's statement that there is no patent covering the design sought to be registered.

> Chasteen has played a key role in the development of an innovative packaging change, Ball's new Touch Top™ end for metal beverage cans (see sidebar on page 14)…
>
> Unique packaging such as shaped cans, Ball's Touch Top™ end and textured cans offer Ball's customers an opportunity to stand out on grocery shelves. Part of Ball's mission as a technology leader is to continue to explore new packaging concepts.
>
> …An even more difficult task may be determining whether Ball's customers -- and consumers -- are willing to pay for a shaped can, which at least initially will cost a little more, says Otis Willoughby, principal engineer.
>
> "Most innovations carry an initial cost, whether it's in price, line speed or convenience," he says. "Are customers willing to pay for the learning curve?"
>
> …One example is the Touch Top end mentioned earlier. By creating a new end that doesn't include a tab, Ball can eliminate the tab process, as well as the weight of the tab, Chasteen notes.
> The Muncie Star, October 30, 1994

A configuration which is so utilitarian as to constitute a superior design, which competitors need to copy in order to compete effectively, is *de jure* functional and unregistrable. However, the mere fact that a product configuration has utility does not necessarily mean that the configuration is unregistrable, because registrability depends upon the degree of design utility. In re Morton-Norwich Products, Inc., 671 F.2d 1332, 213 USPQ 9, 15 (CCPA 1982). See also In re R.M. Smith, Inc., 734 F.2d 1482, 222

11

USPQ 1, 3 (Fed. Cir. 1984). If a product is in a particular shape because it works better in that shape, the configuration is considered *de jure* functional. Factors which are to be considered in the determination of whether a particular product design is superior include (1) the existence of a utility patent that discloses utilitarian advantages of the design, (2) advertising materials in which the utilitarian advantages of the design are touted, (3) the availability to competitors of alternative designs, and (4) facts indicating that the design results from a comparatively simple or cheap method of manufacturing a product. See In re Morton-Norwich Products, Inc., *supra*.

In this case, it is clear that, not only do applicant's advertising materials tout some of the utilitarian advantages of applicant's container top, but also other evidence of record indicates that applicant's design results from a comparatively simple or cheap method of manufacture. Applicant's design provides a larger, more accessible opening in the container top so as to allow a bottle-like drinking experience. This design permits one to drink the contents of the container faster. The circular opening in applicant's container top is elevated so that it is convenient to use. Moreover, the smooth and

rounded edges shown around the top of applicant's container prevent cuts to the fingers and lips.

Despite counsel's arguments to the contrary, there is sufficient evidence of record (statements from applicant's own officers) that applicant's container top is, in the long run, cheaper to manufacture. The top requires less material -- one piece of metal rather than three -- and applicant's design permits the manufacturer to use a lower quality of aluminum. Also, a production line making applicant's containers costs about one-half of the production line cost in making pull-tab tops.

We agree with the Examining Attorney that the fact that a container top can be produced in other shapes does not detract from the functional characteristics of applicant's can top. Applicant's is clearly one of a few superior designs. See In re Bose Corp., 772 F.2d 866, 227 USPQ 1, 6 (Fed. Cir. 1985) and In re Controls Corp. of America, 46 USPQ2d 1308 (TTAB 1998). Accordingly, we conclude that applicant's container top design is a superior design because it performs the function better in this shape. It is therefore *de jure* functional.

For the sake of completeness, in case our decision with respect to functionality is reversed on appeal, we consider the question of whether, if applicant's design

were not *de jure* functional, it would be inherently distinctive.

## Inherent Distinctiveness

Concerning the issue of inherent distinctiveness, applicant argues that the elevated portion of its metal lid is adopted and promoted for its distinctive appearance. Also, applicant's attorney states that applicant is not aware of similar can top designs in use by competitors, and that applicant's promotional literature as well as other material of record clearly points to the container lid's distinguishing features. For example, applicant's attorney refers to the following statements made in applicant's own material:

> Ball's Touch Top center push end is another way for customers to differentiate the product…

> …stands out on grocery shelves…

> …attracts attention…

> The Touch Top™ end offers a distinct look for your product…

> Applicant's attorney also points to the following

statements from an article about applicant:

> Chasteen [one of applicant's senior development engineers] has played a key role in the development of an innovative packaging change, Ball's new Touch Top™ end for metal beverage cans…
> The Muncie Star, Oct. 30, 1994.

14

Applicant concludes that the asserted mark was adopted for show and not as a useful product design.

The Examining Attorney, on the other hand, contends that applicant's design is only a mere refinement of a bottle top opening.

In determining whether a design is inherently distinctive, our primary reviewing court has considered such factors as whether a particular design is a common or basic shape or design, whether it is unique or unusual in its field, and whether it has an "original, distinctive, and peculiar appearance." Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342, 196 USPQ 289, 291 (CCPA 1977) and In re McIlhenny Co., 278 F.2d 953, 126 USPQ 138, 140 (CCPA 1960).

Upon careful consideration of the material in this record, including repeated references by applicant and others to the "distinct" and "uniquely shaped" appearance of applicant's container top, it is our opinion that the Examining Attorney has not demonstrated that applicant's configuration is a common basic shape or design. Rather, in the absence of evidence to the contrary, such as competitors' similar container top designs, it appears that applicant's container top design is original, distinctive and peculiar in appearance.

15

Decision:  The refusal of registration, on the ground of functionality, is affirmed; the refusal of registration on the ground of lack of inherent distinctiveness (if the affirmance on the basis of functionality is reversed on appeal) is reversed.

R. L. Simms

P. T. Hairston

L. K. McLeod
Administrative, Trademark
Judges, Trademark Trial and
Appeal Board