In re TELEDYNE INDUSTRIES, INC.
d/b/a, Teledyne Water Pik.

No. 82–555.

United States Court of Appeals,
Federal Circuit.

Dec. 29, 1982.

JACK R. MILLER, Circuit Judge.

This appeal is from the decision of the Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("board"), 212 USPQ 299 (1981), affirming the examiner's refusal to register appellant's asserted trademark for showerheads on the principal register. We affirm.

Hugh H. Drake, Fort Collins, Colo., argued and filed briefs for appellant.

Associate Sol. Fred E. McKelvey, Washington, D.C., argued for Patent and Trademark Office. With him on the brief was Sol. Joseph F. Nakamura, Washington, D.C.

Before KASHIWA, Circuit Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

## BACKGROUND

The asserted trademark consists of "the configuration of the goods" shown below.[1]

 

Appellant owns three U.S. patents directed to "Spray Nozzles." U.S. Patent No. 3,762,648 (" '648 patent"), issued October 2, 1973, claims and describes a "spray nozzle especially useful as a showerhead operable to deliver an intermittently interrupted or pulsating spray." The overall shape of the showerhead, which houses the showerhead components, does not look like the design here sought to be registered, nor is mention made of any utilitarian or other economic considerations which may have contributed to the design. One feature, however, the orientation of three groups of "discharge orifices" in the end wall of the showerhead, appears to be identical to that shown in appellant's trademark application drawing, and it is stated in the specification of the '648 patent that—

[t]his particular arrangement may be considered to be a preferred one, although this preference is based on the rather

subjective test of what appeared to be the most pleasant massaging action.... By spacing the groups of orifices from each other it appears that the impact of the streams from adjacent groups are sensed independently from each other in a manner which feels more like a pulsating stationary stream than as a continuously moving continuous stream.

Appellant's U.S. Patent No. 3,801,019 (" '019 patent"), issued April 2, 1974, was prosecuted in the PTO as a continuation-in-part of the application which issued as the '648 patent. The invention is a spray nozzle as described in the '648 patent, but it also—

possesses the capability of discharging a continuous or nonpulsating spray and further provides the possibility of a spray which combines both pulsating and nonpulsating streams and in which the pro-

1. Application serial No. 182,039, filed August 14, 1978.

portion of the pulsating to nonpulsating streams can be varied at will.

The '019 patent discloses nothing about the overall exterior design of the showerhead in terms of its utility or economy of manufacture, nor is any part or feature of the design discussed in that context.

Appellant also owns U.S. Patent No. 3,958,756 (" '756 patent"), issued May 25, 1976, which "relates to spray nozzles which may be adjusted to deliver either pulsating or continuous sprays and to improved sealing and related construction features appurtenant thereto." The '756 patent also does not disclose any utilitarian or other economic reason why the showerhead is manufactured with the exterior design shown.

Also before the court is U.S. Design Patent No. 235,445, issued June 17, 1975, now assigned to appellant, which claims the previously illustrated showerhead configuration.

During prosecution, the examiner maintained that the asserted trademark was unregistrable because it was "merely [the] configuration of the goods," had not been shown to indicate the origin of the goods, and was "functional." Appellant filed a notice of appeal, and the examiner repeated the substance of his objections in his answer before the board.

Notwithstanding that it is the overall design shown in appellant's application that it seeks to register, the board stated that the "only two features which appear to us to be worth consideration (the overall configuration comprising a truncated cone projecting from a cylinder being commonplace) are *the orifices* arranged in three groups on the face plate of the shower head and the enlarged, *fluted plastic dial*." (Emphasis added.)

Referring only to the statement in the '648 patent that the arrangement of the discharge orifices was "based on the rather subjective test of what appeared to be the most pleasant massaging action," the board concluded that "[t]he functionality of the spaced orifices is obvious." While noting that the fluted dial is not described in appellant's patents as having any utilitarian aspects, it found that the dial was designed to be manipulated by the user and concluded that it was made cylindrical for "the obvious reason that such a shape is easily conformable to the human hand." The board also stated that the "obvious purpose of the knurls of the dial is to facilitate manipulation of the dial when the user's hands are wet or soapy." Although the board "conceded that these features might also have been achieved by other forms and shapes," it said "that fact does not retract [sic] from the functional character of the configuration which is before us."

## OPINION

The Solicitor repeats the points made by the board that the locations of the orifices appear to give "the most pleasant massaging action," that the cylindrical design of the dial "serves the utilitarian purpose" of permitting the user to adjust the spray, and that the knurls on the dial "would be useful" to facilitate manipulation of the dial when the user's hands are wet or soapy. Additionally, however, the Solicitor focuses attention on the tubular design of the housing, stating that because the shutter-valve operating mechanism of the showerhead fits compactly therein, "[i]t is readily apparent that a tubular housing saves material and thus is useful."[2] Finally, the Solicitor considers the flat ring just inside the inner boundary of the dial and concludes that because it can serve as a means for indicating the rotative position of the dial relative to the housing, it "also reveals a utilitarian purpose."

**2.** *See In re Honeywell, Inc.,* 532 F.2d 180, 189 USPQ 343 (CCPA 1976). Although appellant has argued that the "guts" of the showerhead "could be housed by any kind of distinctive product configuration," such as a square or a rectangle, and that the mechanism for selecting the desired shower spray could be a lever control device rather than a rotative ring, the circular shape is "probably . . . the most utilitarian configuration" in terms of engineering and economic superiority. *Id.* at 182, 189 USPQ at 344.

■ Simply dissecting appellant's alleged trademark into its design features and attributing to each a proven or commonly known utility is not, without more, conclusive that the design, considered as a whole, is de jure functional and not registrable. *In re Morton-Norwich Products, Inc.,* 671 F.2d 1332, 1338, 213 USPQ 9, 13 (CCPA 1982). In other words, merely labeling each design feature as "useful" or as "serving a utilitarian purpose" cannot, as a matter of law, render the entire configuration de jure functional. Rather, the decisive consideration is whether the overall design of appellant's showerhead is so superior in de facto function or economy of manufacture that recognition of that design as a trademark would hinder competition in the showerhead trade. *Id.* at 1339, 213 USPQ at 14–15.

■ Although both the board and the Solicitor have failed to come to grips with this decisive consideration, we must, nevertheless, determine whether the PTO has established a prima facie case of de jure functionality which appellant is then required to rebut with competent evidence. We hold that it has.

We recognize that in most cases such as this, the best the PTO can probably do is to analyze a design from the standpoint of its de facto functional features, perhaps with support from technical articles, patent disclosures, or the applicant's own advertisements. *See In re Morton-Norwich Products, Inc., supra* at 1340–41, 213 USPQ at 15–16. Determination that the design as a whole is not de jure functional may well be possible only in light of evidence more readily available to, or uniquely in the posses-

sion of, the applicant. The record here is devoid of evidence showing the likelihood that other manufacturers could successfully compete in the showerhead trade, i.e., that there exist commercially feasible, alternative showerhead configurations which others could utilize to successfully compete with appellant on the basis of utility.[3]

Accordingly, in the absence of such evidence, which argument of counsel cannot replace, we must hold that appellant has failed to rebut the PTO's prima facie case.[4]

AFFIRMED.

---

**3.** Evidence that other showerhead configurations were considered by management and rejected before the one at bar was selected and that selection was not based on consideration of greater utility would also be relevant, as would testimony of the designer showing the nonutilitarian considerations which entered into composition of the design.

**4.** The Solicitor contended for the first time on appeal that registration of appellant's design is precluded by article I, section 8, clause 8 of the United States Constitution in view of *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84

S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). This contention has been thoroughly considered and twice disapproved by the United States Court of Customs and Patent Appeals. *In re Mogen David Wine Corp.,* 328 F.2d 925, 930, 140 USPQ 575, 579 (CCPA 1964); *In re Honeywell, Inc.,* 497 F.2d 1344, 1348, 181 USPQ 821, 824 (CCPA 1974). Such precedent is binding on this court. *South Corporation v. United States,* 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982).