In re R.M. SMITH, INC., et al.

Appeal No. 84–556.

United States Court of Appeals
Federal Circuit.

May 22, 1984.

Thomas C. Wettach, Pittsburgh, Pa., argued for appellant.

Harris A. Pitlick, Washington, D.C., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and John W. Dewhirst, Associate Sol., Washington, D.C.

Before RICH, KASHIWA and SMITH, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board), 219 USPQ 629, in application serial No. 306,511, filed April 20, 1981, sustaining the examiner's refusal to register to R.M. Smith, Inc. (Smith) its product configuration on the Principal Register for "WATER NOZZLES." We affirm.

*Background*

Smith seeks to register as a trademark the overall appearance of its pistol grip water nozzle shown below. The reference letters and numerals are not part of the mark. The letters A–F point to features which, collectively, Smith says comprise its mark, the numerals 1 and 2 to obviously utilitarian features Smith does not rely on.

A detailed description of the "independent and distinctive design features," set forth by Smith, which comprise its alleged mark is included in the board's opinion, familiarity with which will be presumed. In short, Smith seeks registration as a trademark of the appearance created by the combined use of these six specific "design elements" which it concedes are used in various sub-combinations by the industry.

The PTO Trademark Attorney (erstwhile examiner), refused registration on the ground that the configuration sought to be registered is functional, is similar to the designs of many other nozzles, not particularly unusual, and has not been shown by evidence to have been promoted as a trademark.

*Board Opinion*

The board's well reasoned opinion dealt with whether the configuration sought to be registered is de jure functional and, if not, whether the design is distinctive, i.e., an indication of source or origin. It considered the six features which Smith claims comprise its alleged mark and found them highly functional. The board concluded that "the entire configuration of applicant's water nozzle is de jure functional." The board said that to allow

[a] registration of the instant configuration without any formal description of applicant's mark or explanation of the elements which applicant claims function as its mark would, we believe, hinder competitors who would not know if the features which they are using in their products, whose overall configurations are not dissimilar from that of the applicant, subject them to a suit for trademark infringement. [219 USPQ at 633–634.]

*Issues*

The primary issue is whether the subject matter sought to be registered—the configuration of Smith's pistol grip water nozzle—is de jure functional.

Smith raises additional issues as to an alleged presumption of distinctiveness based on eight years of continuous and exclusive use, and on an expired design patent.

OPINION

The arguments on appeal are essentially the same as those before the board and the examiner. First, Smith argues that the board failed to make a prima facie case of de jure functionality.

■ The board started its analysis stating "some consideration should be given to the six features which applicant claims comprise its mark." Smith argues that the board incorrectly based its decision on a review of these independent parts rather than the mark as a whole. To the contrary, the board, "cognizant of the admonition" of this court in *In re Teledyne Industries, Inc.*, 696 F.2d 968, 217 USPQ 9 (Fed. Cir.1982), proceeded to *initially* review the six features claimed by Smith to comprise its mark. Upon consideration of the entire design, the board found that not only were those features themselves highly functional, except perhaps for the ribs, but that the drawing as a whole included various other highly functional elements, i.e., the clip lock (1), and adjustable nut (2). Based on the functionality of the individual features comprising the design, the board concluded that the design as a whole was de jure functional.

■ We agree with the board that the PTO attorney established a prima facie case of de jure functionality. Smith, to prevail, must rebut this prima facie case with competent evidence. *Teledyne*, supra, 696 F.2d at 971, 217 USPQ at 11.

Smith, in an attempt to meet its burden, states in its brief:

[T]he Board did acknowledge that none of the competitors' nozzles (before it) had all of the predominate [sic] design features of Appellant's nozzle. That is tantamount to admitting that none of the competitive nozzles *looks like* Appellant's nozzle. [Emphasis ours.]

.　　.　　.　　.　　.

[T]he board never concluded, nor could it, that Appellant's design was confusingly similar to any of the competing models. After all, isn't that the Lanham Act test for refusing to register?

.　　.　　.　　.　　.

As to the ability of competitors to determine whether they infringe, it is presumptuous of the Board to suggest that they could not determine when their overall design was confusingly similar or likely to be confusingly similar.

Smith's arguments, directed to likelihood of confusion and ability to avoid infringement, totally fail to meet the rejection, which was based on functionality.

Brief mention of the policy underlying the law of de jure functionality is in order. The seminal case on functionality, as the solicitor calls it, *In re Morton-Norwich Products Inc.*, 671 F.2d 1332, 213 USPQ 9 (CCPA 1982), for analysis purposes separates the term "functional" into two parts, de jure and de facto, which may be distinguished, in part, according to the degree of *utility* present in the design of the product. *See*, B. Duft, *"Aesthetic" Functionality*, 73 Trademark Rptr. 151, 156–67 (1983).

■ In essence, de facto functional means that the design of a product has a function, i.e., a bottle of any design holds fluid. De jure functionality, on the other hand, means that the product is in its particular shape because it works better in this shape. This distinction is useful because the configuration of a product is not necessarily lacking in trademark significance because of "the mere *existence* of utility"; rather, it should depend on "the *degree* of design utility." *Morton-Norwich*, supra, 671 F.2d at 1338, 213 USPQ at 14. *See In re Deister Concentrator Co.*, 289 F.2d 496, 129 USPQ 314 (CCPA 1961).

Additionally, the reason the de jure functional rejection exists is, as stated in *Morton-Norwich*, because

[T]he public policy involved in this area of the law [is], not the *right* to slavishly copy articles which are not protected by patent or copyright, but the *need* to copy those articles, which is more properly termed the right to compete *effectively*.

671 F.2d at 1339, 213 USPQ at 14. Duft, supra, at 179.

■ Thus, when the board denied registration on the ground of de jure functionality it was telling Smith that the overall design of its product is not subject matter protectable as a trademark. Evidence of

distinctiveness is of no avail to counter a de jure functionality rejection.

■ Additionally, Smith argues that the existence of a design patent, now expired, for part of the configuration now in issue is sufficient proof of distinctiveness to rebut the prima facie case of functionality. The existence of a design patent may be some evidence of non-functionality. *Morton-Norwich*, 671 F.2d at 1342, n. 3, 213 USPQ at 17 n. 3; *In re Honeywell Inc.*, 532 F.2d 180, 187 USPQ 576 (TTAB 1976); J. McCarthy, *Trademarks and Unfair Competition* § 7:30 (1973). However, as the TTAB said in *Honeywell* after the CCPA remanded the case to it, "the fact that a device is or was the subject of a design patent does not, without more, bestow upon said device the aura of distinctiveness or recognition as a trademark."

■ Also, Smith contends that its eight years of continuous and exclusive use is sufficient to rebut the board's conclusion. Lanham Act § 2(f), 15 U.S.C. § 1052(f). This section states:

> The Commissioner *may* accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantial- ly exclusive and continuous use thereof *as a mark* by the applicant in commerce for the five years preceding the date of the filing of the application for its registration. [Emphasis ours.]

The board, addressing the evidence submitted by Smith of exclusive and continuous use, found that Smith's "evidence of distinctiveness fails." We agree.

The board, although it felt its decision on functionality sufficed to deny registration, stated its view that appellant had failed to produce persuasive evidence of distinctiveness. It found the nozzle design not to be inherently distinctive and not to have been shown to possess acquired distinctiveness, wherefore it did not function as a trademark to indicate origin. Having reviewed the record, we agree with those conclusions.

The decision of the board is *affirmed*.

AFFIRMED.