jail is a suit against a local government. The Eleventh Amendment, which protects states, is inapplicable, and the decision of the district court should therefore be affirmed.

For the foregoing reasons, I dissent.

## In re PACER TECHNOLOGY.

### No. 02–1602.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 4, 2003.

Thomas E. Schatzel, Law Offices of Thomas E. Schatzel, of Los Gatos, CA, argued for appellant.

Raymond T. Chen, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for appellee. With him on the brief were John M. Whealan, Solicitor; and Cynthia C. Lynch, Associate Solicitor.

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

GAJARSA, Circuit Judge.

Pacer Technology ("Pacer") appeals from a decision of the United States Patent and Trademark Office's ("PTO's") Trademark Trial and Appeal Board ("Board"), which affirmed the PTO's refusal to register as a trademark Pacer's adhesive container cap design on the ground that the design was not inherently distinctive. *In re Pacer Tech.*, Serial no. 75/477,-402 (TTAB June 11, 2002). Because the

Board's decision is supported by substantial evidence, we affirm.

## I. BACKGROUND

Pacer filed a use-based trademark application with the PTO in 1998 to register a cap of a container for adhesives and bonding agents ("adhesive container cap"). Pacer disclaimed the bottom portion of the adhesive container cap during prosecution. The top portion, which Pacer claims as its trademark, has a pointed crown from which four equally spaced flat wings extend, as shown below:

In the initial action, the examining attorney, *inter alia*, refused to register Pacer's application on the basis that the adhesive container cap was not inherently distinctive. To address the refusal, Pacer submitted five affidavits of consumers stating that Pacer's container cap design was a source-identifier of Pacer's product. Nonetheless, the examining attorney maintained his refusal to register the adhesive container cap because it was not inherently distinctive. As support, the examining attorney referred to the cover pages of eleven United States Design Patents showing drawings of various adhesive container caps. The container caps in these design patents all have a crown, and some have four or six evenly spaced wings around the crown. Pacer appealed the examining attorney's refusal to register the adhesive container cap to the Board.

The Board affirmed, finding that the design patents provided by the examining attorney were "probative of the fact that consumers are not likely to find applicant's claimed feature (wings arrayed evenly around a pointed crown) to be at all unique, original or peculiar in appearance." The Board also found that several of the design patents belonged to Pacer's competitors. Based on these design patents, the Board found that Pacer's asserted mark did not serve as a source-identifier for consumers. The Board also found that the design had not acquired distinctiveness, under § 2(f) of the Lanham Act, as a source-identifier, and accordingly affirmed the examining attorney's refusal to register Pacer's adhesive container cap as a trademark. Pacer timely appealed, and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

### A. *Standard of Review*

This court reviews the Board's legal conclusions *de novo, In re Int'l Flavors & Fragrances Inc.*, 183 F.3d 1361, 1365 (Fed.Cir.1999), and the Board's factual findings for substantial evidence, *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed.Cir.2000). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind would accept as adequate" to support a conclusion. *Consol. Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Whether an asserted mark is inherently distinctive is a factual determination made by the Board. *Hoover Co. v. Royal Appliance*

*Mfg. Co.*, 238 F.3d 1357, 1359 (Fed.Cir. 2001).

### B. *Inherent Distinctiveness*

■ The Board found that Pacer's container cap was not inherently distinctive and thus nonregistrable as a mark, based solely on the eleven design patents of container caps. The Board also found that Pacer could not demonstrate that its adhesive container caps had acquired distinctiveness, which Pacer does not dispute on appeal. Therefore, the sole issue presented on appeal is whether the design patents constitute substantial evidence to support the Board's finding of no inherent distinctiveness.

It is well established that the PTO has the burden to establish a *prima facie* case of no inherent distinctiveness. *See, e.g., In re Gyulay*, 820 F.2d 1216 (Fed.Cir.1987) (stating that the Board did not err in affirming the examiner's *prima facie* case that the mark was merely descriptive); *In re Loew's Theatres, Inc.*, 769 F.2d 764, 768 (Fed.Cir.1985) (stating that the PTO made a *prima facie* case showing that the asserted mark was primarily geographically deceptively misdescriptive); *In re R.M. Smith Inc.*, 734 F.2d 1482, 1484 (Fed.Cir. 1984) (stating that the PTO established a *prima facie* case of *de jure* functionality of the asserted mark). Once the PTO sets forth a sufficient *prima facie* case, the burden shifts to the applicant to come forward with evidence to rebut the *prima facie* case. *See Gyulay*, 820 F.2d at 1217; *R.M. Smith*, 734 F.2d at 1484.

Accordingly, on appeal, we must consider whether the PTO has made out a sufficient *prima facie* case of no inherent distinctiveness, and, if so, whether Pacer has submitted sufficient evidence to rebut the *prima facie* case. Here, the question of inherent distinctiveness rests on whether the public in the relevant market would view Pacer's adhesive container cap as a source-identifier. *See Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (stating that a mark is inherently distinctive if its " 'intrinsic nature serves to identify a particular source' " (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992))); *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1206 (Fed.Cir.1994) (Trade dress is inherently distinctive if it "is of such a design that a buyer will immediately rely on it to differentiate the product from those of competing manufacturers."). In considering whether a design is inherently distinctive, we consider factors such as:

> whether it was a "common" basic shape or design, whether it was unique or unusual in a particular field, whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or whether it was capable of creating a commercial impression distinct from the accompanying words.

*Seabrook Foods, Inc. v. Bar–Well Foods Ltd.*, 568 F.2d 1342, 1344 (CCPA 1977) (citations omitted).

The PTO's position is that the design patents showing other adhesive container cap designs are sufficient *prima facie* evidence from which one could conclude that Pacer's design is not unique or unusual in the relevant field and therefore not inherently distinctive. Pacer disagrees, contending that the PTO, as part of its *prima facie* case, is required to show that the patented designs were actually used in the relevant marketplace. We agree with the PTO that it need not do so.

Our decision in *Loew's* is instructive on this issue. *Loew's* concerned whether the use of "Durango" for the product tobacco

was primarily geographically deceptively misdescriptive pursuant to § 2(e)(2) of the Lanham Act.[1] 769 F.2d at 765. On appeal to this court, the applicant argued that the PTO failed to meet its *prima facie* case that there was a goods/place association between tobacco and the geographic name "Durango" because the PTO produced no evidence that the public would *actually* make the asserted association. *Id.* at 768. We disagreed that the PTO, as part of its prima facie case, must establish an actual goods/place association. *Id.* We reasoned that the PTO "does not have means" to undertake the research, such as a marketing survey, necessary to prove that the public would actually make the goods/place association asserted. *Id.* We consequently required the PTO only to establish "a *reasonable predicate* for its conclusion that the public would be *likely* to make the particular goods/place association on which it relies," and not that the public would actually make the asserted association. *Id.* (emphases added).

Similarly, in *Gyulay*, we did not require the PTO, as part of its *prima facie* case, to show that the relevant public actually viewed the asserted mark as merely descriptive. There, the applicant appealed the Board's denial of registration, pursuant to § 2(e)(1) of the Lanham Act, of the term "APPLE PIE" as merely descriptive

of the smell of potpourri. *Gyulay*, 820 F.2d at 1216. In support, the Board had referred to the applicant's wholesale catalog in which the applicant asserted that its potpourri was available in scents "that simulate those unforgettable aromas" such as apple pie. *Id.* On appeal, the applicant argued that descriptiveness should be determined by the ultimate purchasers, and that the contents of the wholesale catalog did not constitute evidence of descriptiveness from the vantage point of the purchasing public. *Id.* at 1217. While we acknowledged that "the trademark attribute of descriptiveness *vel non* is determined from the point of view of the purchaser," we concluded that the wholesale catalog was proper evidence of descriptiveness and sufficient to satisfy the PTO's *prima facie* burden. *Id.*

 As in *Loew's* and *Gyulay*, we conclude here that the PTO is not required as part of its *prima facie* case to show that the container caps in the design patents actually were being advertised, sold, or used in the relevant market. Rather, to meet its *prima facie* burden, the PTO must, at a minimum, set forth a "reasonable predicate" for its position of no inherent distinctiveness. *See Loew's*, 769 F.2d at 768 (stating that the PTO, in making its *prima facie* case that a mark is primarily geographically deceptively misdescriptive,

---

1. Although *Loew's* was decided before the Lanham Act was amended in 1993 to implement relevant provisions of the North American Free Trade Agreement ("NAFTA"), the reasoning and holding in *Loew's* remains unchanged by NAFTA. Pre–NAFTA, the PTO denied registration to a primarily geographically deceptively misdescriptive mark pursuant to § 2(e)(2) of the Lanham Act. In order to do so, the PTO was required to show (1) the primary significance of the mark was a generally known geographic location, and (2) the public was likely to believe that the mark identified the place from which the goods originate and the goods did not originate there. *In re Cal. Innovations, Inc.*, 329 F.3d

1334, 1340 (Fed.Cir.2003) (citing *Loew's*, 769 F.2d at 768). After NAFTA, primarily geographically deceptively misdescriptive marks are now treated pursuant to § 2(e)(3) of the Lanham Act. *Id.* at 1339. Additionally, this court has held that, subsequent to NAFTA, the PTO must establish an additional requirement of "materiality" in addition to the two requirements existing pre-NAFTA before denying registration pursuant to § (2)(e)(3) of the Lanham Act. *Id.* at 1341. Namely, the PTO must also show that the misrepresentation regarding the goods/place association was material to the consumer's decision to purchase the goods. *Id.*

must establish a "reasonable predicate" for its conclusion that the public would be likely to make the goods/place association in question). Furthermore, under our standard of review, we look only for substantial evidence, or more than a scintilla of evidence, in support of the PTO's *prima facie* case. *Consol. Edison,* 305 U.S. at 229, 59 S.Ct. 206; *Hoover,* 238 F.3d at 1359; *R.M. Smith,* 734 F.2d at 1484. Here, the design patents are such sufficient evidence. We agree with the Board that the adhesive container caps in these design patents are "probative" of the fact that consumers would not find Pacer's adhesive container cap design to be unique or unusual. *See Seabrook,* 568 F.2d at 1344. Moreover, the Board found that some of these patents were assigned to Pacer's competitors. In disputing this finding by the Board, Pacer argues that some of the design patents were assigned to foreign companies. However, the fact that some of these competitors were foreign companies would not preclude the presence of these respective adhesive container caps in the relevant United States market. Therefore, Pacer fails to demonstrate why we should not accept this finding by the Board. In proffering the design patents, some of which belonged to Pacer's competitors, the PTO was not obliged to do more to meet its *prima facie* burden. We are mindful of the reality that the PTO is an agency of limited resources. *Loew's,* 769 F.2d at 768 ("The practicalities of the limited resources available to the PTO are routinely taken into account in reviewing its administrative action." (citing *Norton v. Curtiss,* 57 C.C.P.A. 1384, 433 F.2d 779, 794 (1970))). As such, the PTO cannot be expected to shoulder the burden of conducting market research to establish the actual presence of the design patent container caps in the relevant market. *See id.* ("The PTO does not have means to conduct a marketing survey to determine whether the public actually made a goods/

place association . . . ."); *see also In re The Boulevard Entm't, Inc.,* 334 F.3d 1336, 1341, slip. op. at 7 (Fed.Cir.2003) (stating that "although other evidence, such as consumer surveys, would no doubt be instructive," the PTO's finding that a mark comprises or consists of scandalous matter pursuant to 15 U.S.C. § 1052(a) "is not legally insufficient because of the absence of such evidence"). We therefore hold that the PTO has established its *prima facie* case with substantial evidence in the form of the design patents.

Given the PTO's *prima facie* case of no inherent distinctiveness, Pacer now holds the burden of rebutting the *prima facie* case with "competent evidence," *In re Teledyne Indus., Inc.,* 696 F.2d 968, 971 (Fed. Cir.1982). Pacer could successfully rebut the *prima facie* case, for example, with evidence showing that the container caps shown in the design patents were not actually being sold in the relevant market. Although Pacer complains that this would put an unreasonable burden on the applicant to compile such information, we disagree. As between the PTO and the applicant, who can more easily access and compile information requiring market research, it is appropriate, once the PTO makes out its *prima facie* case, to place the burden on the applicant to come forward with relevant evidence of distinctiveness to overcome the PTO's rejection. *See id.* (stating that the determination that a showerhead design is not *de jure* functional "may well be possible only in light of evidence more readily available to, or uniquely in the possession of, the applicant[,]" including whether competitors were able to compete with applicant's design). Alternatively, to forward a successful rebuttal, Pacer could provide evidence showing that, even if one accepted the design patents as evidence of use in the relevant market, the relevant public none-

theless viewed Pacer's container cap as unique or unusual.

Pacer fails to provide any such evidence. Pacer's rebuttal consists of five affidavits signed by individuals in the business of marketing and applying artificial nail products to customers. All five affidavits are nearly identical and merely state that upon seeing Pacer's adhesive container cap, the said affiant "identif[ied] the source of the product to be Pacer Technology." As the Board noted, these affidavits, thus conclusorily worded, fail to explain what it is about Pacer's adhesive container cap that is unique or unusual, or distinctive from those of its competitors. Considering the substance of these affidavits, we conclude that there is substantial evidence that they are not the kind of "competent evidence," *id.*, that could carry Pacer's burden of rebutting the PTO's *prima facie* case. Moreover, as the Board pointed out, these affidavits, which are all signed by individuals in the artificial nail business, at most purport to represent the views of a small segment of the relevant market. The relevant market for the mark is much broader, as Pacer's cap is part of a container holding adhesives and bonding agents generally, and not simply those for artificial nails. In view of the above, we hold that Pacer has failed to rebut the PTO's *prima facie* case of no inherent distinctiveness.

### III. CONCLUSION

Substantial evidence exists as to the PTO's *prima facie* case that the adhesive container cap is not inherently distinctive and as to Pacer's failure to rebut the *prima facie* case. We therefore affirm the Board's decision sustaining the examining attorney's refusal to register Pacer's adhesive container cap on the ground of no inherent distinctiveness.

*AFFIRMED.*

## COSTS

No costs.