LINN, Circuit Judge,
dissenting.
Because the Trademark Trial and Appeal Board (“Board”) incorrectly applied the legal standards in assessing the functionality of the trademark of Becton, Dickinson and Company (“BD”), and because substantial evidence does not support the Board’s conclusion of functionality, I respectfully dissent.
It is undisputed that certain individual features of BD’s closure cap design are functional, but the evidence falls short in supporting a conclusion that the mark, as a whole and as shown in the drawing, is in essence utilitarian, and thus de jure functional. While various individual features of a mark may be de facto functional if they are directed to the performance of certain identified functions, In re Morton-Norwich Prods., Inc., 671 F.2d 1332, 1337 (CCPA 1982), de jure functionality is directed to the appearance of the design (not the thing itself) and is concerned with whether the design is “made in the form it must be made if it is to accomplish its purpose” — in other words, whether the appearance is dictated by function. Morton-Norwich, 671 F.2d at 1338-39 (internal citation omitted); see TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 33, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) (“[A] feature is ... functional when it is essential to the use or purpose of the device or when it affects the cost or quality of the device.”) (citing Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) and Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).
I agree with the majority that the degree of design utility must be considered in determining de jure functionality. Maj. Op. at 1373-74 (citing Morton-Norwich, 671 F.2d at 1338). I part company with the majority, however, when it approves the Board’s “weighting] the elements of a mark against one another to develop an understanding of whether the mark as a whole is essentially functional and thus non-registrable.” Maj. Op. at 1373. The presence of functional features may be relevant, but not in the sense of comparing dissociated functional features against nonfunctional features. The proper inquiry is to examine the degree to which the mark as a whole is dictated by utilitarian concerns (functional or economic superiority) or is arbitrary (“without complete deference to utility”). See Morton-Norwich, 671 F.2d at 1338-39, 1342-43.
Weighing individual elements of a mark against each other is analytically contrary to the consideration of the mark as a whole. As this court has previously held, “[s]imply dissecting appellant’s alleged trademark into its design features and attributing to each a proven or commonly known utility is not, without more, conclusive that the design, considered as a whole, is de jure functional and not registrable.” In re Teledyne Indus., Inc., 696 F.2d 968, 971 (Fed.Cir.1982).
This court’s decision in Morton-Norwich is instructive. Morton-Norwich sought to register the following design:
[[Image here]]
*1368 671 F.2d at 1334. The examining attorney rejected the mark on the basis that the design “is no more than a non-distinctive purely functional container for the goods plus a purely functional spray trigger controlled closure ... essentially utilitarian and non-arbitrary.” Id. at 1335. The Board similarly concluded that the mark “is dictated primarily by functional (utilitarian) considerations, and is therefore unregistrable.” Id. (original emphasis omitted).
Our predecessor court reversed finding that the applicant sought to register “no single design feature or component but the overall composite design comprising both bottle and spray top.” Id. at 1342. Thus, the degree of design utility was analyzed for the whole mark, not the dissociated functional elements. Although the bottle and spray top each served a function, there was a complete absence of evidence to show that the shape of the bottle and spray top were required to look as they did to serve those functions. Id. Indeed, the evidence before the Board established that the bottle and spray top could take a number of diverse forms, equally as suitable from a functional standpoint. Id. The court concluded that there would be no injury to competition if Morton-Norwich were entitled to protection of this particular design; competitors could obtain the functions of the container without copying the trade dress. Id. at 1342-43. In sum, the evidence failed to prove that the overall design was “the best or one of a few superior designs available.” Id. at 1341.
The facts in the present case are very much like those in Morton-Norwich. BD seeks protection of the following mark, with the matter in dotted lines not claimed as a feature:
[[Image here]]
As in Morton-Norwich, there is no evidence that the overall design of the BD closure cap is required to look the way it does or that the design is “the best or one of a few superior designs available.” Id. at 1341-42. The Board and the majority place principal focus on the function served by certain features of the mark, including, inter alia, the top’s opening (to allow for the insertion of a needle), the ribs on the side of the cap (to allow for increased grip), and the bottom’s flanged lip (to allow for a safer opening). These considerations relate to the de facto functionality of individual product features and not the de jure functionality of the overall design — whether the design as a whole must look this way to serve some identified function. In focusing on the functional attributes of individual components, the Board and the majority overlook the arbitrary nature of BD’s overall design.
Even under the improper analysis accepted by the majority, if the individual attributes with recognized functions are *1369 examined, there is no support for the proposition that the form of those components was dictated by their function. There is no evidence that: (1) the hole in the top must be that particular shape and size for a needle to pass through the opening; (2) the side of the cap must possess horizontally spaced ribs in the precise shape, size, and spacing depicted in BD’s design to provide for increased grip; or (3) the bottom lip must be flanged and tapered in the precise manner depicted to avoid being unsafe.
While the proposed mark must be examined as a whole, evidentiary concerns allow the Patent and Trademark Office (“PTO”) to establish a prima facie case of functionality by analyzing de facto functional features of a design. Teledyne, 696 F.2d at 971 (‘We recognize that in most cases ... the best the PTO can probably do is to analyze a design from the standpoint of its de facto functional features.”); Textron, Inc. v. U.S. Int’l Trade Comm’n, 753 F.2d 1019, 1026 (Fed.Cir.1985) (following Teledyne, 696 F.2d at 971); see In re R.M. Smith, Inc., 734 F.2d 1482, 1484 (Fed.Cir. 1984) (following Teledyne, 696 F.2d at 971). The burden then shifts to the applicant to rebut the prima facie case of functionality. Teledyne, 696 F.2d at 971 (“Determination that the design as a whole is not de jure functional may well be possible only in light of evidence more readily available to, or uniquely in the possession of, the applicant.”). However, the ultimate determination of de jure functionality still requires a consideration of the design as a whole. Id.; Textron, 753 F.2d at 1026 (following Teledyne, 696 F.2d at 971).
Here, the examiner focused on functional features to establish a prima facie basis for the rejection and BD, in turn, submitted evidence on functionality to rebut that rejection. While the Board and the majority correctly cite the Morton-Norwich factors to determine the functionality of the overall design based on the evidence presented, Maj. Op. at 1374-75 (quoting Valu Eng’g, Inc. v. Rexnord Corp., 278 F.3d 1268, 1274 (Fed.Cir.2002)); In re Becton, Dickinson & Co., No. 77254637, 2010 WL 3164746, at *4 (T.T.A.B. July 27, 2010) (“Board Opinion”) (citing Morton-Norwich, 671 F.2d), both the Board and the majority fail to consider the design as a whole in analyzing these factors. Maj. Op. at 1374-76; Board Opinion, 2010 WL 3164746, at *4-8.
First, while the Board and the majority put great weight in the existence of a utility patent, U.S. Patent No. 4,741,446 (“the '446 Patent”), that patent fails to illuminate the functionality inquiry. The Supreme Court recognized that “[a] utility patent is strong evidence that the features therein claimed are functional.” TrafFix, 532 U.S. at 29, 121 S.Ct. 1255 (2001). However, the '446 Patent claims none of the features of BD’s design mark. Specifically, the claims of the '446 Patent do not cover the appearance or pattern of the ridges, the flanged lip, or the top opening of BD’s design. See '446 Patent col.8 11.23-29 (“(f) a flexible cap body for mounting on said stopper body; (g) said cap body having an open end and a substantially closed end; ... (i) said closed end having a needle receiving bore in the top surface thereof....”).
Second, the majority correctly notes that the advertisements tout the features of BD’s design that serve a functional purpose, which weighs against a finding of non-functionality. Maj. Op. at 1375-76. However, the advertisements do support the finding of non-functionality based on the third Morton-Norwich factor: the presence of alternative designs. While the majority finds no relevance in the fact that the designs featured in BD’s advertisements were not exactly the same as the current mark, see id., this fact indicates *1370 the existence of alternative designs that are nonetheless functionally identical.
Addressing the third Morton-Norwich factor, the Board and the majority discounted the most probative evidence submitted in this case — the design patents and evidence of alternative designs. Because “the effect upon competition is really the crux of the matter, it is, of course, significant that there are other alternatives available.” Morton-Norwich, 671 F.2d at 1341 (internal quotation omitted).
The three design patents noted by the majority are not identical to the specific design for which trademark protection is sought. Maj. Op. at 1375. However, the fact that three distinct design patents were granted on similar, but not identical, designs performing the same overall function as the current design at issue suggests that the current design is not “made in the form it must be made if it is to accomplish its purpose.” Morton-Norwich, 671 F.2d at 1339 (internal citation omitted). If a design patent can show that one design in a group of functionally identical alternative designs is non-functional, the entire class of arbitrary alternative designs is likely nonfunctional.
Moreover, the court in Morton-Norwich noted that the presence of a design patent, even when a utility patent exists, presumptively indicates a design is de jure nonfunctional. 671 F.2d at 1342 n. 3. The majority references In re Smith for the proposition that a design patent “does not, without more, bestow upon said device the aura of distinctiveness or recognition as a trademark.” In re Smith, 734 F.2d at 1485 (quoting In re Honeywell Inc., 187 U.S.P.Q. 576, 578 (T.T.A.B.1975)). However, the same case also notes that “[e]vidence of distinctiveness is of no avail to counter a de jure functionality rejection.” Id. at 1484-85. Also, even In re Smith states that “[t]he existence of a design patent may be some evidence of non-functionality.” Id. at 1485.
Further, the Board and the majority wholly disregarded the evidence submitted by BD of alternative designs utilized by BD’s competitors. The majority is correct that there is no need to consider alternative designs when functionality has been established, Maj. Op. at 1376; however, “that does not mean that the availability of alternative designs cannot be a legitimate source of evidence to determine whether a feature is functional in the first place.” Valu Eng’g, 278 F.3d at 1276. In this case, the Board disregarded two alternative designs — designs actually used by BD’s competitors — because it found that they shared the same utilitarian features and were therefore not “alternative designs.” See Maj. Op. at 1376. The disqualification of an alternative design because it shares the same utilitarian features is unsupported by law. See Morton-Norwich, 671 F.2d at 1342 (“[Competitors may even copy and enjoy all of [the design’s] functions without copying the external appearance of appellant’s spray top.” (emphasis added)). In fact, this evidence strongly suggests that BD’s design is not functional because BD faces competition from products with similar functionality, yet differing designs. As in Morton-Norwich, BD’s “[competitors have apparently had no need to simulate” BD’s product design “in order to enjoy all of the functional aspects” of a closure cap. Id. at 1342 (emphasis in original). Any concern that BD will unfairly assert its mark against these competitors rings hollow when BD, in seeking protection of this mark, has already distinguished those designs of its competitors.
Finally, the Board may not ignore the fourth Morton-Norwich factor—whether the design results from a less expensive method of manufacture — when evidence *1371 was presented on it. There were undisputed statements from BD indicating that the design did not result from reduced costs of manufacture. This uncontroverted evidence should have been taken into consideration in the Board’s weighing of the factors. While the majority characterizes this as “little record evidence,” Maj. Op. at 1376, it is evidence that must be considered nonetheless.
Because the Board committed legal error in failing to analyze the functionality of BD’s mark as a whole and lacked substantial evidence for its findings, I would reverse the Board’s decision on functionality. On the functionality determination, I therefore respectfully dissent.
Because the Board’s analysis of acquired distinctiveness was influenced in material respects by its legally erroneous finding of functionality, see Board Opinion, 2010 WL 3164746, at *9, I would vacate that portion of the Board’s opinion and remand for reconsideration.