This Opinion is a
Precedent of the TTAB

Mailed: July 9, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

‾‾‾‾

Trademark Trial and Appeal Board

‾‾‾‾

*In re Allegiance Staffing*

‾‾‾‾

Serial No. 85663950

‾‾‾‾

Nicholas A. Dupre of Knighton & Stone, PLLC, for Allegiance Staffing.

Cory Boone, Trademark Examining Attorney, Law Office 104,
    Chris Doninger, Managing Attorney.

‾‾‾‾

Before Seeherman, Ritchie and Gorowitz,
    Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Allegiance Staffing has appealed from the final refusal of the Trademark Examining Attorney to register ALLEGIANCE STAFFING in standard characters, with STAFFING disclaimed, as a trademark for "temporary employment agency services provided to others, not including hospitals and healthcare providers" in Class 35. The application was filed on June 28, 2012, is based on use in commerce (Section 1(a) of the Trademark Act), and asserts first use and first use in commerce at least as early as February 1, 1999.

Registration has been refused pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark so resembles the following eight marks, registered by the same entity for the indicated services, all in Class 35, that as used by Applicant in connection with its identified services, it is likely to cause confusion or mistake or to deceive.

| Registration No. and Issue Date | Mark | Services |
|---|---|---|
| 2516311 December 11, 2001 | ALLEGIS GROUP (standard characters, with GROUP disclaimed) | Personnel placement and recruitment for temporary and permanent positions |
| 2888615 September 28, 2004 | ALLEGIS GROUP (GROUP disclaimed) | Personnel placement and recruitment for temporary and permanent positions |
| 3411335 April 15, 2008 | ALLEGIS SERVICES INDIA (standard characters, with SERVICES INDIA disclaimed) | Employment hiring, recruiting, placement, staffing and career networking services; Operation of telephone call centers for others; Personnel placement and recruitment; Temporary employment agencies[1] |
| 3350905 December 11, 2007 | ALLEGIS GROUP SERVICES (standard characters, with GROUP SERVICES disclaimed) | Business management and consultation; Employment hiring, recruiting, placement, |

---

[1] This registration also includes services in Class 42.

| Registration No. and Issue Date | Mark | Services |
|---|---|---|
| | | staffing and career networking services; Human capital management outsourcing services; Temporary employment agencies. |
| 3760311 March 16, 2010 | ALLEGIS Recruitment Process Outsourcing (RECRUITMENT PROCESS OUTSOURCING disclaimed) | Employment agency services, namely, filling the temporary and permanent staffing needs of businesses; Employment hiring, recruiting, placement, staffing and career networking services; Outsourcing in the field of temporary and permanent employment services: Outsourcing services. |
| 3760312 March 16, 2010 | ALLEGIS RPO (Standard characters, with RPO disclaimed) | Employment agency services, namely, filling the temporary and permanent staffing needs of businesses; Employment hiring, recruiting, placement, staffing and career networking services; Human capital management outsourcing services; Outsourcing in the field of temporary and permanent employment services; Outsourcing services |
| 4207811 September 11, 2012 | ALLEGIS PARTNERS (Standard characters, with PARTNERS disclaimed) | Employment hiring, recruiting, placement, staffing and career networking services; |

| Registration No. and Issue Date | Mark | Services |
|---|---|---|
| | | Employment recruiting consultation; Personnel placement and recruitment; Professional staffing and recruiting services; Providing on-line interactive employment counseling and recruitment services |
| 4179460<br><br>July 24, 2012 | ALLEGIS<br><br>(Standard characters) | Employment agency services, namely, filling the temporary and permanent staffing needs of businesses; Employment hiring, recruiting, placement, staffing and career networking services; Executive recruiting services; Human capital management outsourcing services; Personnel management; Providing on-line employment information in the field of recruitment, placement, temporary staffing, permanent staffing, professional staffing, human capital out-sourcing, and managed services[2] |

---

[2] This registration also includes services in Class 42.

Before we address the substantive issue in this appeal, we must comment on the application's prosecution. Applicant submitted duplicate copies of its response to the first Office Action, filing one through the Office's TEAS[3] system, and one using the Federal Express mailing service. This practice of duplicate filings is strongly discouraged as it merely adds to the bulk of the file and makes it more difficult to review the submissions. In fact, the duplicate filings of Applicant's response to the first Office Action resulted in the submission delivered by Federal Express being included as part of the electronically filed submission. Therefore, the response filed on April 15, 2013 is shown as having 105 pages, although pages 54 through 104 duplicate the material filed through TEAS; there is also a separate entry, dated April 16, 2013, of 51 pages, for the submission that was filed through Federal Express.[4] The first page of Applicant's response shows that the duplicate filing was deliberate; it states "Via FedEx" and "Via Online TEAS Submission." It is not clear whether Applicant was concerned about its submission reaching the Office in a timely manner, or whether it believed that the duplicate filing was helpful. We have already explained that it is not helpful. As for any concern about the efficacy of electronic filing, the better practice for an applicant that has such a concern is to simply check, at the conclusion of the electronic filing process, that there has been an acknowledgment of receipt. Then, if the applicant's subsequent review of the

---

[3] TEAS is the Trademark Electronic Application System through which applications and responses to Office actions may be filed.

[4] The slight discrepancy in the number of pages is due to the fact that one page of the electronic filing consists of an electronically generated table of the data, and contains links to each page of the response and exhibits, as well as the filer's signature and transmission information; the additional pages in the April 15, 2013 entry are copies of the Federal Express envelope.

electronic record reveals an incomplete or missing file entry, the applicant can contact the examining attorney for instructions about remedying the problem.

Applicant also attached to its appeal brief the same exhibits it had submitted with its responses, totaling 55 pages; again, the Board discourages this practice. *In re Lorillard Licensing Co.*, 99 USPQ2d 1312, 1315 (TTAB 2011); *In re SL&E Training Stable Inc.*, 88 USPQ2d 1216, 1220 n.9 (TTAB 2008) (attaching as exhibits to brief material already of record requires Board to determine whether attachments had been properly made of record and adds to the bulk of the file); *In re Thor Tech Inc.*, 85 USPQ2d 1474, 1475 n.3 (TTAB 2007) (attaching evidence from record to briefs is duplicative and is unnecessary).

Turning to the refusal, our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also, In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). Each factor may, from case to case, play a dominant role. *du Pont*, 177 USPQ at 567.

We reverse the refusal of registration because of the differences in the meaning and commercial impression of the marks, the degree of care exercised by consumers of Applicant's and the Registrant's services, and the fact that the USPTO permitted the eight cited registrations to issue over Applicant's prior registration for the identical mark and services at issue here.

This is one of the rare cases in which the thirteenth *du Pont* factor, "any other established fact probative of the effect of use," plays a role. *du Pont*, 177 USPQ at 567. This factor "accommodates the need for flexibility in assessing each unique set of facts." *In re Strategic Partners Inc.*, 102 USPQ2d 1397, 1399 (TTAB 2012). And the fact situation in this case is unusual. Applicant owned a prior registration for the same mark and services for which it currently seeks registration. Registration No. 2507546 for ALLEGIANCE STAFFING in typed form,[5] with STAFFING disclaimed, issued on November 13, 2001. The registration expired on June 15, 2012, due to Applicant's inadvertent failure to renew it. As soon as this came to Applicant's attention, "Applicant immediately reapplied for registration of the Mark on June 28, 2012." Response filed April 15, 2013, p. 3.

During the time that Applicant's prior registration was in effect, six of the cited registrations issued, and two more applications were approved for publication. That is, over a period of eleven years, five different examining attorneys, as shown on the faces of the cited registrations, considered the marks in the eight cited registrations when they were still applications, and determined that such marks were not likely to cause confusion with the mark in Applicant's prior registration.[6]

---

[5] Effective November 2, 2003, Trademark Rule 2.52, 37 C.F.R. § 2.52, was amended to replace the term "typed" drawing with "standard character" drawing. *See* TMEP § 807.03 (January 2015).

[6] The files of the cited registrations are not of record, so we cannot ascertain whether the examining attorneys cited Applicant's prior registration and then were persuaded that the Registrant's marks were not likely to cause confusion with Applicant's prior registration, or whether they did not cite Applicant's prior registration at all. However, we presume, based on established norms for searching existing registrations for potential likelihood of confusion issues, that the examining attorneys reviewing these applications became aware of Applicant's prior registration when examining the applications.

These determinations by several different examining attorneys over an extended period of time, and as recently as 2012,[7] that the marks in the now-cited registrations were not likely to cause confusion with the mark in Applicant's prior registration, which was for the identical mark and services that are at issue in this appeal, have been taken into consideration in our likelihood of confusion analysis.

We have considered the Examining Attorney's argument that "prior decisions and actions of other trademark examining attorneys in registering other marks have little evidentiary value and are not binding upon the USPTO or the Trademark Trial and Appeal Board." Brief, 10 TTABVUE 16. We agree with that legal principle. *See In re Davey Products Pty. Ltd.*, 92 USPQ2d 1198, 1206 (TTAB 2009). By considering as part of our analysis the USPTO's allowance of the eight cited registrations over Applicant's prior registration, we do not hold that this Board is bound by the decisions of the examining attorneys that there was no likelihood of confusion between the cited ALLEGIS marks and Applicant's prior ALLEGIANCE STAFFING mark. However, we conclude that under the particular circumstances here, where: (i) the same Applicant owned a prior registration for the identical mark covering the same services; (ii) none of the five different examining attorneys who examined the cited registrations refused registration based on a likelihood of confusion with the same mark for which registration is sought in the current application; and (iii) Applicant inadvertently allowed the prior registration

---

[7] In fact, two of the cited registrations issued in July and September 2012, while the Examining Attorney who examined the subject application issued the first Office Action on October 18, 2012.

to lapse, and attempted to correct that lapse by filing its new application within two weeks of its prior registration expiring, we give the fact that no likelihood of confusion was found in eight separate situations due weight in our analysis.

With that in mind, we turn to a consideration of the other relevant *du Pont* factors. Applicant's services are identified as "temporary employment agency services provided to others, not including hospitals and healthcare providers." The closest services to these, as identified in the cited registrations, are "Employment agency services, namely, filling the temporary and permanent staffing needs of businesses" in, for example, Registration No. 4179460 for ALLEGIS in standard characters. Applicant's "temporary employment agency services provided to others" and Registrant's "filling the temporary staffing needs of businesses" are essentially the same.[8] Because of this, and because the marks in the other cited registrations contain additional points of difference with Applicant's mark, we confine our analysis of the issue of likelihood of confusion to that between Applicant's mark and Registrant's ALLEGIS mark in standard characters. If confusion is likely between these marks, there is no need for us to consider the likelihood of confusion with the other ALLEGIS marks, while if there is no likelihood of confusion between Applicant's mark and ALLEGIS in standard characters, then there would be no

---

[8] Because the services are legally identical, Applicant's arguments regarding specific differences in the manner and channels of trade in which Applicant and Registrant render their respective services are not persuasive. *Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed").

likelihood of confusion with the other ALLEGIS marks. *See In re Max Capital Group Ltd.* 93 USPQ2d 1243, 1245 (TTAB 2010).

Turning to a consideration of Applicant's mark ALLEGIANCE STAFFING and the cited mark ALLEGIS, we first reiterate the well-established principle that, in reaching a conclusion on the issue of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties. *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). The word STAFFING in Applicant's mark is descriptive, as Applicant has acknowledged by its disclaimer of it in response to the Examining Attorney's requirement. Because descriptive words have little source-indicating significance, it is appropriate that we give less weight to STAFFING; simply put, the presence of this word in Applicant's mark is not sufficient to distinguish the marks. As for the dominant element ALLEGIANCE in Applicant's mark, clearly there are similarities between this word and ALLEGIS, in that they are three syllables and start with the letters ALLEGI. However, the endings of these words are different, and that difference is likely to be noted because the ending in Applicant's mark results in a recognizable word, ALLEGIANCE. With respect to any phonetic similarity, we agree with the Examining Attorney that there is no correct pronunciation of a trademark that, like ALLEGIS, is not a word, but a coined term. Thus, the beginning letters, ALLEG, could be pronounced the same as these letters in ALLEGIANCE. However, there is

no "N" in the ending letters, "IS," and therefore the ending of the cited mark cannot be deemed to sound like the ending of ALLEGIANCE. Further, any similarity in pronunciation is not as significant here because of the nature of the services. Employment agency services are not general consumer "items," but are services offered to and obtained by businesses.

It is the difference in meaning of the words that is even more significant, since ALLEGIANCE has a clear meaning, while ALLEGIS is a coined term which has no meaning. As our primary reviewing court has said, "the familiar is readily distinguishable from the unfamiliar." *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*, 505 F.2d 719, 184 USPQ 34, 35 (CCPA 1974) (Court found that consumers would not confuse DUVET with DUET because virtually everyone is familiar with DUET and its meaning, while consumers would not view DUVET as an English word, and would not know its definition.);[9] *In re General Electric Co.*, 134 USPQ 190, 192 (CCPA 1962) (Court found consumers would easily differentiate between VULCAN and VULKENE because they would recognize VULCAN as something already known, while VULKENE is a coined word: "We entirely agree with appellant that 'the human mind has little difficulty differentiating between the familiar and the unfamiliar.'"; no likelihood of confusion even though marks were used on identical goods); *see also Jacobs v. International*

---

[9] This case was decided in 1974, before "duvet" became a commonly used term for comforters. According to the opinion, the definition of "duvet" at that time was "a downy growth characteristic of some fungus cultures." 184 USPQ at 35. That the *National Distillers* facts might be assessed differently today does not undermine the principle stated by the court.

*Multifoods Corp.*, 668 F.2d 1234, 212 USPQ 641, 642 (CCPA 1982), and cases cited therein. *Faberge, Inc. v. Dr. Babor GmbH & Co.*, 219 USPQ 848, 851 (TTAB 1983), involved the marks BABOR and BABE, both for cosmetic products. In finding no likelihood of confusion, the Board stated (citations omitted):

> we note that in a number of cases, the familiar versus unfamiliar comparison was made and while it may not have been the only factor which influenced those decisions, it was found to be highly significant in reaching the decision that confusion was unlikely to occur. The logic behind the decisions is clear. One recognizes instantly that which is familiar. Conversely, that which is unfamiliar would be given closer scrutiny and in this way could be distinguished from the familiar.

In view thereof, we find that the differences in meaning of the involved marks, and the consequent differences in commercial impression, outweigh any similarities in appearance and pronunciation caused by the letters ALLEGI that the marks have in common.

As the Board said in the passage quoted above, the fact that one mark is a familiar word, while another is not, may not have been the only factor which influenced the decisions in those cases. Here, too, the familiar versus unfamiliar dichotomy is not the only factor favoring Applicant. Just as in the *General Electric* and *Faberge* cases, the *du Pont* factor relating to the conditions of purchase is significant, since the care that would be exercised by customers would result in their noting the differences in the marks at issue. Services identified in both the application and the cited registration include temporary employment agency services provided to others. Such services, by their nature, do not fall in the category of impulse purchasing. Businesses in need of temporary help or individuals

seeking a temporary employment agency for placements would exercise a heightened level of care in their decisions. As a result, they would note the differences between the trademarks ALLEGIANCE STAFFING, which is composed of commonly understood words, and ALLEGIS, a coined term which, as used in connection with the identified services, does not have any recognizable derivation.

With respect to the other *du Pont* factors, Applicant argues that there has been a 15-year period of contemporaneous use without any actual confusion. However, Applicant has also acknowledged that in the states in which Applicant renders its services Registrant does not use its ALLEGIS marks. Brief, 8 TTABVUE 16. Because Applicant and Registrant do not make contemporaneous use of their respective marks in the same geographic areas, there has been no meaningful opportunity for confusion to occur, if it were likely to occur, and therefore we cannot draw any conclusion from the lack of evidence of actual confusion. Nor have we given any probative value to the third-party registrations for ALLEGIANCE submitted by Applicant. It is not clear what purpose Applicant believes that these registrations would serve in terms of supporting its position, but the fact that ALLEGIANCE has been registered by third parties for disparate goods and services has no probative value in our likelihood of confusion analysis. With respect to the sixth *du Pont* factor, the number and nature of similar marks in use in connection with similar services, there is no evidence of any third-party use. We therefore treat the foregoing *du Pont* factors as neutral. Finally, we have given no probative value to the statement made on page 3 of Applicant's request for reconsideration filed

November 12, 2013 that "Allegis and all their affiliates have no issue with the use of Applicant's Mark, consent to Applicant's use of same and agree that Applicant's Mark is not confusingly similar to the Cited Marks." Applicant has merely asserted this, and has not submitted any consent or agreement by Registrant to support this assertion. *See, e.g.*, *In re Teledyne Indus., Inc.*, 696 F.2d 968, 217 USPQ 9, 11 (Fed. Cir. 1982) (argument of counsel is not evidence); *Peeler v. Miller*, 535 F.2d 647, 190 USPQ 117, 121 (CCPA 1976) (same).

After considering all of the evidence and arguments, including those not discussed specifically herein, we find that, despite the legal identity of the services and consequent legally identical channels of trade, confusion is not likely. The combination of the differences in the meaning and commercial impression of the marks, the care with which the services will be chosen, and the fact that over an 11-year period the USPTO permitted eight ALLEGIS registrations to issue over Applicant's prior registration for the identical mark and services at issue here, lead us to find no likelihood of confusion between Applicant's mark and the marks and services in the cited registrations.

**Decision**: The refusal of registration is reversed.