Hearing:                                           Paper No. 24
February 13, 1997                                       RLS/HLJ

THIS DISPOSITION IS
CITABLE AS PRECEDENT OF THE TTAB              FEB 19 ,98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
————————

Trademark Trial and Appeal Board
————————

In re Controls Corporation of America
————————

Serial No. 74/254,945
————————

Edward of Kerkam, Stowell, Kondracki & Clarke, P.C. for
Controls Corporation of America.

Susan K. Leslie, Trademark Examining Attorney, Law Office
104 (Sidney Moskowitz, Managing Attorney).
————————

Before Rice, Simms and Cissel, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:

Controls Corporation of America (applicant), a Virginia
corporation, has appealed from the final refusal of the
Trademark Examining Attorney to register on the Supplemental
Register the asserted mark shown below:



for goods described as "seat and filter assembly for gas regulators."[1]  The Examining Attorney has refused registration on the ground that the asserted mark is *de jure* functional.[2]  Applicant and the Examining Attorney have submitted briefs and an oral argument was held.

---

[1]  Application Serial No. 74/254,945, filed March 13, 1992, based upon applicant's claim of use and use in commerce since on or about March 1, 1987.  In the original application, applicant asserted:

>      No claim is made to the exclusive use of a filter
>    per se apart from the configuration shown.

Applicant amended its application to seek registration on the Supplemental Register on July 28, 1993.

[2]  In connection with this refusal, it is noted that the Examining Attorney has in her brief referred to Sections 1, 2 and 45 of the Trademark Act, 15 USC Sections 1051, 1052 and 1127. While Section 45 is the definitional section of the Trademark Act, Sections 1 and 2 pertain to applications on the Principal Register.  Section 23 of the Trademark Act, 15 USC Section 1091, provides:

>      (c) For the purposes of registration on the
>      supplemental register, a mark may consist of any
>      trademark, symbol, label, package, configuration
>      of goods, name, word, slogan, phrase, surname,
>      geographical name, numeral, or device or any
>      combination of any of the foregoing, but such
>      mark must be capable of distinguishing the
>      applicant's goods and services.

Applicant's seat and filter assembly is designed to remove or prevent contaminants from fouling the operation of a gas regulator. Applicant describes its mark as follows:

> The mark consists of the configuration of a capsule comprising a hexagonal cap having a cylindrical member extending therefrom, a cylindrical body member beneath the cap having external threads, wherein the body member tapers inwardly and a lower cylindrical member extends from the taper.

Arguments

It is applicant's position, expressed in its reply brief and at the oral hearing, that the principles set forth in the seminal case of In re Morton-Norwich Products Inc., 671 F.2d 1332, 213 USPQ 9 (CCPA 1982), are not applicable to this case, because *Morton-Norwich* involved an application for registration on the Principal Register, whereas applicant here seeks registration on the Supplemental Register. According to applicant, "a configuration of goods mark which is de jure functional, is capable of distinguishing Applicant's goods, should be registered on the Supplemental Register …" Applicant's reply brief, 2.[3] That is, applicant argues that the principles set forth in *Morton-Norwich* apply to designs or configurations requiring

_____

However, because the Examining Attorney has consistently refused registration of the asserted mark on the ground that it is de jure functional, and because applicant has clearly understood the Examining Attorney's arguments in this regard, this mistake is not considered material to the appeal.

[3] This position is different from the one which applicant took in its principal brief, where it stated that a mark which is *de jure* functional can never function as a trademark. See brief, 7.

distinctiveness and not to applications seeking registration on the Supplemental Register, and that there is no statutory bar to exclude marks which are functional yet capable of distinguishing one party's goods from those of others. According to applicant, the doctrine of functionality should operate only as an affirmative defense in inter partes cases much like other affirmative defenses such as laches or acquiescence, so that the courts may deny protection or the enforceability of a registration because of the anti-competitive effect.

Even though applicant has taken this position in its reply brief, applicant's counsel has argued that the configuration herein sought to be registered is not a design which is dictated by utilitarian considerations, and that the functionality refusal should therefore be reversed. Applicant argues that there are no utility patents disclosing the utilitarian advantages of applicant's configuration. Also, the record shows, according to applicant, that there are numerous alternatives, or different filter housing shapes for gas regulators, which perform the same function as applicant's device. See attachments. Applicant argues, therefore, that the fact that competitors have not needed to use applicant's design is evidence that its particular design is not functional. Applicant also maintains that the declarations made of

4

record by applicant, which have not been rebutted by the Examining Attorney, show that applicant's device is not cheaper or easier to make than competitive devices.  In this regard, although only pricing information has been made of record, applicant argues that pricing is directly related to manufacturing costs.  With respect to promotional literature describing applicant's filter assemblies, pointed to by the Examining Attorney, applicant argues:

> The modular design of applicant's filter assembly, while touted as providing a convenience feature, does not provide any additional, enhanced or improved filtering ability greater than that of the competing products.  While the modular design is touted as being beneficial in protecting the seat assembly from contamination, all filters are designed to prevent fouling of the seat assembly … As noted in response to the previous Official Action, the competitors' designs submitted by Applicant far outsell Applicant's design.  Thus, it can be reasonably inferred that Applicant's design does not provide any greater utilitarian or functional advantage over these designs.  The competing designs merely perform the filtering function in a different, not necessarily less functional or less utilitarian manner than that of Applicant.
> There is no empirical evidence that Applicant's design protects the seat assembly from contamination any better than the designs of the competitors.  Absent any empirical evidence that the design of Applicant's competitors performs their stated function worse than the design of Applicant, the statements in the advertisements may be treated as mere advertising puffery designed to encourage consumers to purchase Applicant's goods …
> … Moreover, as noted above, all of the competitors of Applicant are significantly larger than Applicant and have a higher sales

> volume overall than that of Applicant.
> Accordingly, there is strong evidence that
> the advantages lauded in Applicant's
> advertising are merely puffery and are not
> evidence of functionality.

Applicant's Response, filed October 4, 1995, 5-7.

Applicant also notes that, when its application was still on the Principal Register, it submitted declarations of officers attesting to the fact that the trade recognizes applicant's product configuration as its design. According to applicant, brief, 15, its modular design is "more of a marketing and salability feature than a functional one."[4]

Applicant concludes, therefore, that its configuration is only one of the many possible configurations available, that the configuration sought to be registered is not functional and that it is capable of being a trademark.

It is the Examining Attorney's position, on the other hand, that applicant's design consisting of a hexagonal cap, threaded cylinder body and lower filter body is *de jure* functional. While the Examining Attorney acknowledges that there is no utility patent covering applicant's configuration, the Examining Attorney argues that other *Morton-Norwich* factors demonstrate that applicant's configuration is *de jure* functional. Essentially, the

---

[4] In its reply brief, 5, however, applicant states:

> It cannot be denied that certain benefits
> are derived from a modular design in which
> the teflon [sic] seat is encapsulated…

Examining Attorney argues that applicant's modular seat assembly presents a superior design which is unregistrable on either the Principal or the Supplemental Register.  As the Examining Attorney views applicant's asserted mark, it consists essentially of three parts: a hexagonal cap, a threaded cylindrical section and a tapered lower cylindrical member, which lower body is a metal filter which provides gas stream filtration.  (The seat assembly and valve components are housed within the filter and upper cylindrical body.)  The Examining Attorney has noted that applicant in its appeal brief, 7, has conceded that the threads beneath the hexagonal cap are functional because they serve to secure the filter in place.  The Examining Attorney also points to an information sheet which explains that the "modular component eliminates any chance of incorrect assembly of seat parts in the field and makes servicing a quick and simple operation."  Relying upon advertising claims made by applicant with respect to its "innovative 'encapsulated' seat…[with] [a]ll seat-related components…self-contained in a sealed module," the Examining Attorney argues that applicant is emphasizing the advantages of the modular design of its seat and filter assembly.

> The new 5500 and 6500 Series are designed
> with encapsulated Teflon® seat assemblies
> that include a unique wrap-around sintered
> metal 40 micron filter.  That means there's
> only one part to change during maintenance -
> and only one part to stock.  The modular

encapsulated seat assembly is simple, durable and easy to replace. In fact, the encapsulated seat is so trouble-free that CONCOA unconditionally guarantees it for a full 3 years.

There's virtually no possibility of contamination from chips or brass dust on the seat assembly, the number one cause of regulator failure. The encapsulated seat module also acts as a heat sink to absorb the "heat-of-recompression" when opening a full high pressure cylinder. You get the ultimate in gas compatibility, reliability and safety.

With respect to the competitive products available in the marketplace, examples of which were provided by applicant, the Examining Attorney argues that almost all of the identified features of applicant's design -- the cap, the threaded mid-section and a lower cylindrical member -- are used in the competitive designs. The Examining Attorney concludes:

Granting exclusive trademark rights to the applicant for the referenced features would prevent competitors from using a confusingly similar configuration of a cap, threaded mid-section and lower cylindrical member in their own regulators. The applicant has conceded that the threading is functional, in that it is used to secure the filter in place. If exclusive use of the configuration is granted to the applicant, competitors would be unable to continue to use the functional design, effectively eliminating competition.

Examining Attorney's appeal brief, 7.

With respect to the question of whether applicant's design results in a simpler or cheaper method of manufacture, the Examining Attorney notes that applicant has given an average price of its goods. The Examining Attorney

8

notes that this information relates to applicant's regulators as a whole and does not specifically address the cost of manufacture of the capsule design. Finally, with respect to applicant's arguments that it has promoted its design as a trademark, the Examining Attorney disagrees, contending that none of applicant's advertisements tells the customer to look for a certain shape or design in order to distinguish applicant's goods from those of others.

Discussion

If a configuration of a product embodies a design which is superior to other designs, then it provides a competitive advantage and the configuration is *de jure* functional or functional in law. See In re Morton-Norwich Products, supra, at 213 USPQ 14 ("[E]xamination into the possibility of trademark protection is not to the mere *existence* of utility, but to the *degree* of design utility.") See also Brunswick Corp. v. British Seagull Ltd., 35 F.3d 1527, 32 USPQ2d 1120, 1122 Fed. Cir. 1994). If the configuration is *de jure* functional, it cannot be registered on either the Principal or the Supplemental Register. See In re Minnesota Mining and Manufacturing Company, 335 F.2d 836, 142 USPQ 366, 368 (CCPA 1964) ("Applicable in addition to the statutory considerations are those policy considerations, which could prevent registration on the Principal Register, considered in our opinion in In re Deister Concentrator Co.,

9

48 CCPA 952, 289 F.2d 496, 129 USPQ 314, which apply equally to registration on both registers.") and TMEP Section 1202.03(a)(i)(C). See also In re Water Gremlin Co., 635 F.2d 841, 208 USPQ 89, 91 (CCPA 1980); In re Pollak Steel Co., 314 F.2d 566, 136 USPQ 651, 655 (CCPA 1963); In re Shaw, 184 USPQ 253 (TTAB 1974) and J. T. McCarthy, <u>McCarthy</u> <u>on Trademarks and Unfair Competition,</u> § 7.95, p. 7-221 (4th ed. 1996). As applicant has acknowledged, the refusal of *de jure* functionality is not specifically enumerated in the Trademark Act, but rather is a refusal developed by the courts on the basis of public policy. See the discussion in *Morton-Norwich*, 213 USPQ at 12. We reject, therefore, applicant's argument that registration on the Supplemental Register of a *de jure* functional configuration is permissible if the design is "capable" of distinguishing applicant's goods from those of others.

While the emphasis in these cases must, of course, be placed upon the overall design of a configuration sought to be registered, it has been recognized that it is sometimes helpful to analyze a configuration from the standpoint of its various features. In re R.M. Smith Inc., 219 USPQ 629, 631 (TTAB 1983), *aff'd*., 734 F.2d 1482, 222 USPQ 1 (Fed. Cir. 1984). As the Examining Attorney has noted, a product does not have to be the subject of a utility patent in order for it to be held functional. In re Teledyne Industries,

Inc., 212 USPQ 299, 301, *aff'd*., 217 USPQ 9 (Fed. Cir. 1982).

There is no doubt that the threaded feature of applicant's configuration serves a utilitarian purpose -- that of securing the filter and seat assembly in place. Applicant has admitted this. See brief, 7. See also applicant's Amendment, filed April 13, 1994, 3. Moreover, while applicant has not specifically so stated in this record, the hexagonal cap has the obvious utilitarian purpose of permitting one to use an open-end or a socket wrench in order to secure the filter and seat assembly in place and to remove it. Counsel also conceded this fact at the oral hearing. Because these features are obviously functional, if applicant eventually prevails, it must submit an amended drawing of its mark showing the hexagonal cap and the threaded portion of its filter and seat assembly in dotted lines. This will represent that applicant is not claiming that these aspects of its configuration are proprietary features of its mark. A statement should also be made of record that the matter shown by the dotted lines is not part of the mark. See Trademark Rule 2.51(d) and TMEP Section 807.03(a). See also In re Water Gremlin Co., 635 F.2d 841, 208 USPQ 89 (CCPA 1980) and In re Famous Foods, Inc., 217 USPQ 177 (TTAB 1983).

Upon careful consideration of this record and the arguments of the attorneys, we agree with the Examining Attorney's analysis of the functionality of applicant's seat and filter assembly and believe that this record establishes that the configuration sought to be registered by applicant is de jure functional or functional in law. The entire design consists of a functional hexagonal cap, functional threaded members and a simple lower cylindrical body which consists of a housing for the elements of applicant's filter assembly. The configuration results from a comparatively simple design housing the filter assembly. Applicant's advertising, we believe, touts the superiority of this simple design and helps establishes its unregistrability.[5]

In this regard, we have also examined the competitive designs of record and find them to contain aspects similar to applicant's configuration—-caps, threaded mid-sections and lower cylinders housing the filters. Although it is true that the competitive designs are not identical in appearance to applicant's, we nevertheless believe that this record establishes that applicant's design is, if not the best, certainly one of the few superior designs for a seat and filter assembly for gas regulators.

**DECISION**: The refusal to register is affirmed.

---

[5] At the oral hearing, applicant's counsel conceded that the small hole, partially obscured in the drawing by the hexagonal

12

J. E. Rice

R. L. Simms

R. F. Cissel
Administrative Trademark
Judges, Trademark Trial
and Appeal Board

---

cap, also serves a utilitarian function and must be present in
the assembly in order for it to work properly.